IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ATTENTIVE MOBILE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| 317 LABS, INC. d/b/a EMOTIVE, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Attentive Mobile Inc. ("Attentive" or "Plaintiff") alleges against Defendant 317 Labs, Inc. d/b/a Emotive ("Emotive" or "Defendant") as follows:

1.      This case involves patented, two-tap mobile technologies that helped to revolutionize and have become widely adopted in the fields of mobile-signup and mobile-messaging products and platforms, by enabling businesses to interact and connect with mobile users in a new way through messaging.

2.      Plaintiff's patented technologies transformed the way businesses could interact and connect with mobile users, while also enhancing the experience of the mobile users.

3.      Plaintiff Attentive has implemented its patented technologies in its mobile-signup and mobile-messaging products and platforms.

4.      Over the years, Plaintiff Attentive has received numerous accolades and awards for its products and services.  For example, Attentive has been named number 10 on the "Forbes 2022 Cloud 100," the definitive ranking of the top 100 private cloud companies in the world.

5.     Plaintiff Attentive currently owns U.S. Patent No. 11,416,887 ("the '887 Patent," attached hereto as **EXHIBIT 1**) and U.S. Patent No. 11,416,897 ("the '897 Patent," attached hereto as **EXHIBIT 2**) (collectively, "the Asserted Patents").

6.     Plaintiff's patented technologies provide such vast improvements over the traditional mobile-signup and mobile-messaging experience that Attentive's offerings and services have become widely adopted and the "gold standard" in the mobile-messaging platform industry.

7.     Defendant Emotive is a direct competitor of Attentive and provides mobile-signup and mobile-messaging products and platforms that, without authorization, implement Plaintiff's patented technologies.  Defendant's infringing mobile-signup and mobile-messaging products and platforms include, but are not limited to, Emotive's SMS Marketing Platform and Emotive's other offerings and services that integrate with Emotive's SMS Marketing Platform (collectively, "the Accused Products").

8.     Plaintiff brings this action to seek damages for and to ultimately stop Defendant's continued infringement of the Asserted Patents.  As a result of Defendant's unlawful competition in this judicial district and elsewhere in the United States, Plaintiff has lost sales and profits and suffered irreparable harm, including lost market share and goodwill.

### NATURE OF THE CASE

9.     Plaintiff brings claims under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, for infringement of the Asserted Patents. Defendant has infringed and continues to infringe each of the Asserted Patents under at least 35 U.S.C. §§ 271(a), 271(b) and 271(c).

### THE PARTIES

10.     Plaintiff Attentive is the leader in mobile-messaging technology and is a market-leading innovator in the field of business-to-consumer communication.  Attentive's mobile-signup

and mobile-messaging products and platforms help businesses, from entrepreneurs to enterprises, strengthen relationships with their consumers in new ways as a direct result of Attentive's patented technologies, as described and claimed in the Asserted Patents. Attentive's mobile-signup and mobile-messaging products and platforms drive billions in e-commerce revenue. Over 5,000 leading brands rely on Attentive to deliver powerful and innovative commerce experiences.

11.     Plaintiff Attentive is the owner by assignment of each of the Asserted Patents.

12.     Plaintiff Attentive's mobile-signup and mobile-messaging products and platforms incorporate Attentive's patented technology.

13.     Plaintiff Attentive's mobile-signup and mobile-messaging products and platforms have enjoyed commercial success and have been implemented for thousands of clients nationwide as a result of Attentive's patented technology.

14.     Plaintiff Attentive is a corporation organized in the State of Delaware with its headquarters located at 221 River Street, Hoboken, NJ 07030 that conducts business in this District, throughout this state, and throughout the country.

15.     Plaintiff Attentive actively employs over 1,300 employees in the United States.

16.     On information and belief, Defendant Emotive is a corporation organized in the State of Delaware with its principal place of business at 11390 West Olympic Boulevard, Suite 100, Los Angeles, CA 90064.

## **JURISDICTION & VENUE**

17.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

18.     This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

19.     This Court has personal jurisdiction over Defendant in the State of Delaware.  On information and belief, Defendant Emotive is a corporation organized and existing under Delaware law.  Further, Defendant Emotive has engaged in systematic and continuous business activities in this District.  As described below, Defendant has also committed acts of patent infringement giving rise to this action, including within the State of Delaware.

20.     This Court also has personal jurisdiction over Defendant Emotive by virtue of, *inter alia*, the fact that it has committed, aided, abetted, contributed to, and/or participated in the commission of a tortious act of patent infringement that has led to and/or will lead to foreseeable harm and injury to Attentive, a Delaware corporation, in the State of Delaware.

21.     Defendant has purposely directed its activities toward the State of Delaware which give rise to the causes of action asserted by Plaintiff such that the exercise of personal jurisdiction by courts within the State of Delaware is fair and reasonable.  For example, Emotive regularly conducts business in the State of Delaware, including using software, providing services, and/or engaging in other activities in the State of Delaware that infringe one or more claims of the Asserted Patents, as well as inducing and contributing to the direct infringement of others through acts in this District.

22.     This Court has personal jurisdiction over Defendant Emotive for other reasons that will be presented to the Court if jurisdiction is challenged.

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

24.     Venue is proper in this district with respect to Defendant Emotive because it is incorporated in the State of Delaware, and, therefore, resides in the State of Delaware.  *See* 28 U.S.C. § 1400(b).  Additionally, venue is proper in this district with respect to Defendant

Emotive because it has committed acts of infringement in this judicial district, and, upon information and belief, it will commit further acts of infringement in this judicial district.

25.     Venue is proper for the reasons set forth above, and for other reasons that will be presented to the Court if such venue is challenged.

<b><u>PLAINTIFF'S PATENTED INNOVATIONS</u></b>

26.     Plaintiff Attentive has been and continues to be a pioneer and leading innovator in developing and providing mobile-signup and mobile-messaging products and platforms.

27.     The Asserted Patents discussed below capture technology, features, and processes that reflect these innovations and improvements on traditional mobile-signup and mobile-messaging products and platforms.

28.     The '887 and '897 Patents are part of the same patent family and generally disclose and claim non-transitory processor-readable mediums and methods related to mobile device messaging-based communications using custom-generated deeplinks and based on the Hyper Text Transfer Protocol (HTTP).  Plaintiff Attentive owns by assignment the entire right, title, and interest in and to the '887 and '897 Patents.

29.     The '887 Patent is entitled "Methods and Apparatus for Mobile Device Messaging-Based Communications Using Custom-Generated Deeplinks and Based on the Hyper Text Transfer Protocol (HTTP)," was filed on February 10, 2022, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on August 16, 2022.  The '887 Patent claims priority to Provisional Application No. 62/511,413, filed on May 26, 2017.  The '887 Patent is a continuation of Application No. 17/569,265, filed on January 5, 2022, which is a continuation of Application No. 17/496,590, filed on October 7, 2021, which is a continuation of Application

5

No. 15/986,569, filed on May 22, 2018.  A true and correct copy of the '887 Patent is attached as **Exhibit 1**.

30.     The '897 Patent is entitled "Methods and Apparatus for Mobile Device Messaging-Based Communications Using Custom-Generated Deeplinks and Based on the Hyper Text Transfer Protocol (HTTP)," was filed on January 5, 2022, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on August 16, 2022.  The '897 Patent claims priority to Provisional Application No. 62/511,413, filed on May 26, 2017.  The '897 Patent is a continuation of Application No. 17/496,590, filed on October 7, 2021, which is a continuation of Application No. 15/986,569, filed on May 22, 2018.  A true and correct copy of the '897 Patent is attached as **Exhibit 2**.

31.     The inventions described and claimed in the Asserted Patents solve various technical problems, including by disclosing technological advancements that (a) provide means for causing a mobile device to transition from one application to a different application, including through the use of deeplinking, (b) provide custom text messages, including prepopulated text messages, and (c) allow for enrollment in a promotion or subscription without an additional communication, such as an opt-in communication.  The disclosed technological advancements address technological problems and enhance the user experience and the mobile-signup process, *inter alia*, by not requiring the mobile device user to have to enter a phone number or message as part of the signup process, which often led to failed signups as a result of mistyped numbers or messages and/or lost interest.  The disclosed technological advancements described and claimed in the Asserted Patents solved these and other problems.  The specifications of the Asserted Patents support this.  For example, as described in the specifications, the mobile-signup and mobile-messaging methods and systems known at the time the Asserted Patents were filed allowed a user

to open an e-commerce vendor's application or website on a mobile device, where the user could then provide information via the vendor's application or website, for example, to complete a transaction, enroll in a promotion, and/or signup for a subscription offered by the vendor.  With these known techniques, however, the user often would pause its previous activities (e.g., viewing a website, reading an email) on the mobile device and would be redirected to the vendor's application or website, for example, to complete a transaction, enroll in a promotion, and/or signup for a subscription offered via many user inputs (e.g., clicks or screen taps).  This time-consuming and burdensome process resulted in many users failing to complete the desired activity.  (*See*, *e.g.*, **Exhibit 1**, '887 Patent, 1:30-52.)

32.     Plaintiff's patented technologies accordingly fill a previously existing need for dynamic application deeplinking to transition from one user interface to another user interface at a mobile device for continued and improved user experience and engagement when interacting with the mobile device.  (*Id.*)

33.     Each of the claimed inventions of the Asserted Patents is necessarily rooted in computer technology—in other words, messaging-based communications using custom-generated deeplinks and based on HTTP are fundamentally and inextricably a problem experienced with computer technology and networks—and addresses fundamental computer technology problems with a computer technology solution.  Furthermore, the Asserted Patents improve the technical functioning of the computer network using techniques—such as by providing dynamic application deeplinking to transition from one user interface to another user interface at a mobile device—to improve the user experience and engagement by allowing a continued and near-seamless user experience.  These technical improvements address identified weaknesses in conventional systems and processes.  (*Id.*)

34.    For example, the '887 Patent describes and claims, *inter alia*, non-transitory computer-readable mediums storing code including instructions configured to cause a click-to-text server to "(1) automatically transition from [a] first application to [a] messaging application in response to the mobile device detecting a user interaction with a promotional message associated with the webpage" and "(2) automatically populate a custom message in the messaging application." (*See, e.g.*, **Exhibit 1**, '887 Patent, 21:54-61.)  In effect, this process remotely controls the user device using custom deeplinks and/or HTTP, which allows for automation of the process and improved user experience and engagement.  The '887 Patent further provides that the mobile device is enrolled in a promotion based on receiving the custom message and without receiving any additional information from the mobile device.

35.    The claimed non-transitory computer-readable mediums of the '887 Patent constitute technical improvements over traditional mobile-signup and mobile-messaging systems and provide numerous advantages to computer systems (including mobile devices) and the process of interacting with users and potential customers.

36.    Similarly, the '897 Patent describes and claims, *inter alia*, methods and non-transitory computer-readable mediums storing code including instructions configured to cause a processor to cause "(1) [a] mobile device to transition from [a] first application to a second application different" and "(2) the second application to automatically populate a custom text message." (*See, e.g.*, **Exhibit 2**, '897 Patent, 24:47-54.)  In effect, this process remotely controls the user device using custom deeplinks and/or HTTP, which allows for automation of the process and improved user experience and engagement.  The '887 Patent further provides that the mobile device received an installment of a messaging subscription service without receiving an opt-in communication after receiving the custom text message.

37.     The claimed methods and non-transitory computer-readable mediums of the '887 Patent constitute technical improvements over traditional mobile-signup and mobile-messaging systems and provide numerous advantages to computer systems (including mobile devices) and the process of interacting with users and potential customers.

38.     The inventions described and claimed in the Asserted Patents necessarily address issues unique to computer networks and computer network operation; namely the use of network information to create custom deeplinks to allow for automation of the enrollment and/or subscription process of a networked mobile device.   These patents provide unique network operations enhancement that solves the technical problems associated with allowing a continued and near-seamless user experience to improve the user experience and engagement.

39.     The inventions described and claimed in the Asserted Patents improve the operation of computer networks and networked devices by automatically creating custom deeplinks and custom messages.   The claimed inventions in these patents provide a technological solution to a technological problem—the inability of conventional code solutions to allow dynamic application deeplinking to transition from one user interface to another user interface at a mobile device for continued and improved user experience and engagement when interacting with the mobile device.

## ACCUSED PRODUCTS

40.     Emotive uses, makes, offers, sells, maintains, and installs mobile-signup and mobile-messaging products and platforms that provide and implement subscription-based and/or promotional messaging for individuals and enterprises.   Emotive's SMS Marketing Platform and Emotive's other offerings and services that integrate with Emotive's SMS Marketing Platform (collectively, "the Accused Products") incorporate Plaintiff's patented technologies.

41.     Emotive describes and markets its Accused Products as follows:



(https://emotive.io/product/build-your-subscriber-list.)

42.     Emotive instructs and encourages its customers to use the Accused Products to "turn your valuable web traffic into subscribers":



(*Id.*)

43.     Emotive describes its Accused Products as "[m]ore than an SMS marketing service: a full-funnel text marketing platform. (https://emotive.io/?show_demo=true&utm_content= HelloBar.) Emotive instructs and encourages its customers to use its Accused Products to "[e]ngage your customers through SMS marketing." (*Id.*)

44.     Emotive publicizes the following attributes of its Accused Products:



(*Id.*)

45.     Emotive instructs and encourages its customers to use the Accused Products to create and edit popups, including mobile popups, by creating a "New signup flow" and selecting "Emotive Popup":



(https://emotive.zendesk.com/hc/en-us/articles/4419515936919-Create-and-edit-popups-in-Emotive-Shopify-.)

46.    Emotive instructs and encourages its customers to use the Accused Products to create, *inter alia*, mobile popups that offer a discount and to "Collect SMS + Email" using Emotive's "dual capture popup":

Before we get started, here are some tips to maximize subscriber collection through your popups:

1. **Use Mobile & Desktop.** Activate popups for both platforms to reach the most traffic.

2. **Offer a discount.** Aim for at least 10% (but know that many brands offer more).

3. **Collect SMS + Email.** Our dual capture popup allows you to collect both, so you don't cannibalize either channel.

4. **Customize for your brand.** Include your brand's logo, colors, and even a background image on your popup.

5. **Activate the bubble tab/bar.** Ensure a sign-up bubble remains visible, even if a visitor closes the popup—these generate an average of 50% more opt-ins. (you can find this under "styles.")

(*Id.*)

47.     Emotive instructs and encourages its customers to create a mobile popup using the Accused Products:



(*Id.* (annotated).)

48.     Emotive instructs and encourages its customers to use the Accused Products to provide, *inter alia*, a discount type and amount, custom text, and a button with which to allow interaction from the mobile device user:

## Text fields

- **Text:** Click on "Text" to select your discount type and amount (or add custom text with no discount), and select your text color by adding a HEX code or using the color selector.

- **Font:** Select the font to display on your popup.

- **Customer Input Fields.** Select "Email + SMS" if you use Klaviyo or Mailchimp as your email platform and you'd like to collect email addresses to pass along to your ESP. Select "SMS" if you only want to collect SMS opt-ins and don't use Klaviyo or Mailchimp.

- **Email collection.** If you've selected "Email + SMS," tap on the Klaviyo or Mailchimp icon and enter your API key. Then select a list from the dropdown to add new email addresses to. See more detailed instructions for Klaiyo **here**, and Mailchimp **here**.

- **Button.** You can update the button text and color.

- **Button Close.** You can update the color, size, and position. You can also remove it from the desktop version.

- Terms and privacy policy will automatically populate, there's no action needed.

(*Id.*)

49.     Emotive requires that its customers use a "Subscribe keyword" associated with each subscription-based and/or promotional messaging "Experience":

3) **Welcome messaging.** Now you'll create your subscribe keyword and select or create your Experience.

- **Subscribe keyword.** *This is only needed for mobile popups if you've chosen "Tap to capture" rather than "Form to capture".* This is the message that will populate on behalf of the subscriber in their messenger app when tapping the button on the popup.

- **Select an Experience.** The last step is to connect your popup to an Experience, to welcome new subscribers with an automated two-way conversation. Select an existing experience (ensure that the discount offered in the Experience is the same as the offer on your popup), or create a new one.



(*Id.*)

50.     Emotive also instructs and encourages its customers to disable any other "popups" (*e.g.*, other mobile-signup and mobile-messaging platforms such as Attentive's offerings and services):

> ## Don't forget to pause any existing popups!
>
> If you have another popup already live on your site, you'll just need to deactivate it using your current popup provider to avoid having two popups on your site.

(*Id.*)

51.     On information and belief, Emotive's customers deploy and implement the Accused Products pursuant to Emotive's instructions for generating popups described above as follows:











52.     Emotive instructs and encourages its customers to use the Accused Products by "Setting Up Your Popup and Welcome Experience" as follows:

Website popups are the fastest way to grow a list of highly engaged SMS subscribers. Before we get started, here are some tips to maximize subscriber collection through your popups:

1. **Use Mobile & Desktop.** Activate popups for both platforms to reach the most traffic.

2. **Offer a discount.** Aim for at least 10% (but know that many brands offer more).

3. **Collect SMS + Email.** Our dual capture popup allows you to collect both, so you don't cannibalize either channel.

4. **Customize for your brand.** Include your brand's logo, colors, and more. (We can do this for you!)

5. **Activate the bubble tab/bar.** Add a bubble tab/bar so even if a visitor closes the popup at first, they can access it later—these generate an average of 50% more opt-ins. (You can find this under "styles.")

(https://emotive.zendesk.com/hc/en-us/articles/6147259585303-Setting-Up-Your-Popup-and-Welcome-Experience.)

53.    Emotive further instructs and encourages its customers to use its Accused Products to "[t]urn your loyal email subscribers into SMS opt-ins to drive even higher engagement and revenue."     (https://emotive.zendesk.com/hc/en-us/articles/5750847859863-Invite-your-email-subscribers-to-SMS.)

54.    Emotive's SMS Marketing Platform allows customers to create new signup flows:



(*Id.*)

55.    As an example, Emotive instructs and encourages its customers to create an "Emotive Popup" that "appears on desktop and mobile [devices] for your customer to subscribe with their email and phone number":



(*Id.*)

56.     Emotive instructs and encourages its customers to create signup flows using a "Subscribe keyword" and "Welcome messaging":

(*Id.*)

57.     Emotive "recommend[s] offering a promotional discount to new subscribers:



(*Id.*)

58.     Emotive instructs and encourages its customers to create custom messages to send to mobile devices in connection with a signup flow:



(*Id.*)

59.     Emotive publicizes the following example of an implemented Signup Flow:



(*Id.*)  Continuing with this example promoted by Emotive, Emotive instructs and encourages its customers to "[a]dd [the custom link associated with a created Signup Flow] to the 'Sign me up' button in this case, and here's what the customer will see on their mobile device":



(*Id.*)[1]  As stated in the transcript of the embedded video, "this only works for customers on mobile devices." (https://www.loom.com/share/967224dd83264fce8c6fa68f4382d7da.) Continuing with the specific example promoted by Emotive, Emotive instructs and encourages its customers that

---

[1]     According to Emotive's website (https://emotive.zendesk.com/hc/en-us/articles/6147259585303-Setting-Up-Your-Popup-and-Welcome-Experience) and the embedded video (also available at https://www.loom.com/share/967224dd83264fce8c6fa68f4382d7da), the custom text message depicted is generated as a result of the mobile user interacting with the "Sign me up" button in the email, despite the email identifying "Live Pure Smoothie Cubes" and the text message identifying "Outdoor World."

"[o]nce [the mobile device users] send the text, they'll receive the message you created in your sign up Experience."



(https://emotive.zendesk.com/hc/en-us/articles/6147259585303-Setting-Up-Your-Popup-and-Welcome-Experience.)

60.    On information and belief, Emotive's SMS Marketing Platform integrates with and/or provides a platform for some or all of Emotive's other mobile-signup and mobile-messaging offerings and services:



(*See,  e.g.*,  https://emotive.zendesk.com/hc/en-us/articles/5750847859863-Invite-your-email-subscribers-to-SMS.)

### <u>EMOTIVE'S PATTERN AND PRACTICE OF COPYING</u>

61.    In addition to Defendant Emotive's current acts of patent infringement giving rise to this action, Emotive has exhibited a pattern and practice of infringing upon Attentive's intellectual property rights.

62.    For example, on or about August 2021, Emotive published and promoted without authorization substantially similar marketing materials to Attentive's duly-owned materials, and therefore was infringing Attentive's copyright.

63.    Attentive's image and Emotive's substantially similar, infringing image, are depicted below:



64.     Following a cease and desist letter sent from general counsel for Attentive to Brian Zatulove, the CEO of Emotive, Emotive agreed to remove and stop using the infringing image, on or about August 9, 2021.

65.     For example, on or about September 2021, Emotive published and promoted without authorization substantially similar marketing materials to Attentive's duly-owned materials, and therefore was infringing Attentive's copyright as well as engaging in unfair trade practices.

66.     Attentive's image and Emotive's substantially similar, infringing image, are depicted below:



67.     As can be seen from the images, the similarities are striking, and it appears that Emotive simply copied Attentive's image and copy.  The five call-outs are identical.  The legal disclosure language is identical.  And the language on the buttons is identical.  This copying is especially apparent because the legal disclosure language that Emotive copied from Attentive is

markedly different from Emotive's standard language and because the two buttons and content Emotive copied from Attentive is markedly different from Emotive's standard single button stating: "Subscribe with SMS."

68.     Despite providing notice of Emotive's copying, copyright infringement, and unfair trade practices, Emotive did not respond to Attentive's September 2021 cease and desist letter, and, to this day, Emotive continues to publicize and promote the substantially similar, infringing image on its website.  (*See* https://emotive.io/product/compliance-and-deliverability, last accessed 8/25/2022.)

69.     Additionally, other content from Emotive's website appears to be taken directly from Attentive's materials, including the below, which is by no means an exhaustive list:

| Attentive[2] | Emotive[3] |
|---|---|
| "ensure best practices are enforced at every step of the customer journey" | "ensure best practices are enforced at every step of the customer journey" |
| "Confidently build a revenue generating text message marketing channel designed with compliance in mind" | "you can confidently build a revenue generating channel designed with compliance in mind" |
| "Carrier relations team working with leading carriers on informing guidelines and best practices" | "Emotive's carrier relations team works with leading carriers on informing guidelines and best practices" |

70.     The examples above, in combination with Emotive's current acts of patent infringement giving rise to this action, demonstrate Emotive's pattern and practice of disregard for and infringement of the intellectual property rights of others, including specifically Attentive's intellectual property.

---

[2] https://www.attentive.com/compliance, last accessed 8/25/2022.

[3] https://emotive.io/product/compliance-and-deliverability, last accessed 8/25/2022.

## FIRST CAUSE OF ACTION
## (INFRINGEMENT OF THE '887 PATENT)

71.     Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

72.     Emotive has infringed and continues to infringe one or more claims of the '887 Patent in violation of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States and will continue to do so unless enjoined by this Court.  The Accused Products, including features such as Emotive's SMS Marketing Platform and Emotive's other offerings and services that integrate with Emotive's SMS Marketing Platform, at least when used for their ordinary and customary purposes, practice each element of at least claim 1 of the '887 Patent as described below.

73.     For example, claim 1 of the '887 Patent recites:

1.     At least one non-transitory processor-readable medium storing code configured to be executed by a processor of a click-to-text server, the code including instructions configured to cause the click-to-text server to:

send, to a client server, an integration tag configured to be served with a webpage hosted by the client server, the integration tag configured to cause a mobile device loading the webpage via a first application to send user data to at least one of the client server or the click-to-text server;

define and send a uniform resource identifier (URI) to the mobile device in response to the mobile device executing the integration tag, the URI deeplinking to a messaging application different from the first application and configured to cause the mobile device to (1) automatically transition from the first application to the messaging application in response to the mobile device detecting a user interaction with a promotional message associated with the webpage, the messaging application being different from the first application, and (2) automatically populate a custom message in the messaging application that includes an address associated with the click-to-text server and a message body that includes an identifier associated with at least one of the webpage or the user data such that, upon detecting a single user interaction with a send button of the messaging application, the mobile device sends the custom message to the click-to-text server;

receive the custom message at the click-to-text server; and

enroll the mobile device in a promotion associated with the promotional message based on receiving the custom message and without receiving any additional information from the mobile device.

74.     The Accused Products practice and embody each element of claim 1 of the '887 Patent.

75.     To the extent the preamble is construed to be limiting, the Accused Products comprise "*[a]t least one non-transitory processor-readable medium storing code configured to be executed by a processor of a click-to-text server.*"  The Accused Products, by nature, are software applications.  As software applications, the Accused Products are designed to be stored on at least one non-transitory processor-readable medium storing code configured to be executed by a processor.

76.     Further, the Accused Products provide SMS marketing services, and therefore the applications and programs associated with the Accused Products are intended and designed to be executed by a processor of a click-to-text server.

77.     On information and belief, Emotive owns, operates, and/or maintains at least one click-to-text server with a processor on which the Accused Products operate.

78.     On information and belief, Emotive owns, operates, and/or maintains a click-to-text server on which the Accused Products operate located in Seattle, WA, having an internet protocol ("IP") address of 108.138.128.124.

79.     On information and belief, Emotive collects information associated with users of the Accused Products using, for example, an Internet tag, pixel tag, or clear GIF, and transmits the collected information to a server.  (https://emotive.io/privacy.)

80.     On information and belief, the Accused Products send/receive and/or cause a third-party provider to send/receive text messages.  For example, Emotive instructs and encourages its

customers to add a custom link associated with a Signup Flow, that when selected will cause a mobile device user to receive a custom text message:



(https://emotive.io/product/build-your-subscriber-list.)

81.     The Accused Products "*send, to a client server, an integration tag configured to be served with a webpage hosted by the client server, the integration tag configured to cause a mobile device loading the webpage via a first application to send user data to at least one of the client*

*server or the click-to-text server.*"   For example, Emotive and its customers use the Accused Products to send an integration tag as claimed.  Emotive instructs and encourages its customers to use the Accused Products create mobile popups that offer a discount and to "Collect SMS + Email" using Emotive's "dual capture popup":

Before we get started, here are some tips to maximize subscriber collection through your popups:

1. **Use Mobile & Desktop.** Activate popups for both platforms to reach the most traffic.

2. **Offer a discount.** Aim for at least 10% (but know that many brands offer more).

3. **Collect SMS + Email.** Our dual capture popup allows you to collect both, so you don't cannibalize either channel.

4. **Customize for your brand.** Include your brand's logo, colors, and even a background image on your popup.

5. **Activate the bubble tab/bar.** Ensure a sign-up bubble remains visible, even if a visitor closes the popup—these generate an average of 50% more opt-ins. (you can find this under "styles.")

(https://emotive.zendesk.com/hc/en-us/articles/4419515936919-Create-and-edit-popups-in-Emotive-Shopify-.)

82.     On information and belief, the popups created by the Accused Products comprise integration tags as claimed.  For example, Emotive instructs and encourages its customers to create a mobile popup using the Accused Products:



(*Id.* (annotated).)

83.     Furthermore, Emotive instructs and encourages its customers to use the Accused Products to provide, *inter alia*, a discount type and amount, custom text, and a button with which to allow interaction from the mobile device user:

## Text fields

- **Text:** Click on "Text" to select your discount type and amount (or add custom text with no discount), and select your text color by adding a HEX code or using the color selector.

- **Font:** Select the font to display on your popup.

- **Customer Input Fields.** Select "Email + SMS" if you use Klaviyo or Mailchimp as your email platform and you'd like to collect email addresses to pass along to your ESP. Select "SMS" if you only want to collect SMS opt-ins and don't use Klaviyo or Mailchimp.

- **Email collection.** If you've selected "Email + SMS," tap on the Klaviyo or Mailchimp icon and enter your API key. Then select a list from the dropdown to add new email addresses to. See more detailed instructions for Klaiyo **here**, and Mailchimp **here**.

- **Button.** You can update the button text and color.

- **Button Close.** You can update the color, size, and position. You can also remove it from the desktop version.

- Terms and privacy policy will automatically populate, there's no action needed.

(*Id.*)

84.     The Accused Products "*define and send a uniform resource identifier (URI) to the mobile device in response to the mobile device executing the integration tag, the URI deeplinking to a messaging application different from the first application and configured to cause the mobile device to (1) automatically transition from the first application to the messaging application in response to the mobile device detecting a user interaction with a promotional message associated with the webpage, the messaging application being different from the first application, and (2) automatically populate a custom message in the messaging application that includes an address associated with the click-to-text server and a message body that includes an identifier associated with at least one of the webpage or the user data such that, upon detecting a single user interaction*

37

*with a send button of the messaging application, the mobile device sends the custom message to*

*the click-to-text server*."

85.     On information and belief, the Accused Products define and send a URI as claimed.

For example, to implement the Accused Products, Emotive requires that its customers use a

"Subscribe keyword" associated with each subscription-based and/or promotional messaging

"Experience."  (*Id.*)  Further, the Accused Products utilize and comprise an identifier associated

with at least one of the webpage or the user data as claimed.  Emotive requires that its customers

define a "Subscribe keyword" associated with each subscription-based and/or promotional

messaging "Experience" when using the Accused Products.  As indicated in Emotive's instructions

to its customers, the "Subscribe keyword" corresponds to "the message that will populate on behalf

of the subscriber in their messenger app when tapping the button on the popup":

---

3) **Welcome messaging.** Now you'll create your subscribe keyword and select or create your Experience.

- **Subscribe keyword.** *This is only needed for mobile popups if you've chosen "Tap to capture" rather than "Form to capture".* This is the message that will populate on behalf of the subscriber in their messenger app when tapping the button on the popup.

- **Select an Experience.** The last step is to connect your popup to an Experience, to welcome new subscribers with an automated two-way conversation. Select an existing experience (ensure that the discount offered in the Experience is the same as the offer on your popup), or create a new one.

---



(*Id.*)

86.     When the popup created by and associated with the Accused Products is interacted with, the URI deeplinks to a messaging application different from the first application and configured to cause the mobile device to (1) automatically transition from the first application to the messaging application and (2) automatically populate a custom message as claimed.  (*See, e.g.*, *id.*)

87.     Upon detecting a single user interaction with a send button of the messaging application, the mobile device sends the custom message to the click-to-text server of the Accused Products.  (*See, e.g.*, *id.*)

88.     The Accused Products "*receive the custom message at the click-to-text server*." Once a user of a mobile device interacts with the messaging application, the Accused Products receive the custom message at the click-to-text server.  As can be seen from the actual deployments

of the Accused Products depicted below, the click-to-text server receives the custom message and

responds with a promotional message:









89.     The Accused Products "*enroll the mobile device in a promotion associated with the promotional message based on receiving the custom message and without receiving any additional information from the mobile device.*"  Once a user of a mobile device interacts with the messaging application, the Accused Products enroll the mobile device in a promotion associated with the promotional message based on receiving the custom message and without receiving any additional information from the mobile device.  As can be seen from the images above, the mobile device user is enrolled and receives the promotion associated with the promotional message without having to provide any additional information.

90.     In addition to the examples above, Emotive instructs its customers to offer a promotional discount in conjunction with using and implementing the Accused Products:

Before we get started, here are some tips to maximize subscriber collection through your popups:

1. **Use Mobile & Desktop.** Activate popups for both platforms to reach the most traffic.

2. **Offer a discount.** Aim for at least 10% (but know that many brands offer more).

3. **Collect SMS + Email.** Our dual capture popup allows you to collect both, so you don't cannibalize either channel.

4. **Customize for your brand.** Include your brand's logo, colors, and even a background image on your popup.

5. **Activate the bubble tab/bar.** Ensure a sign-up bubble remains visible, even if a visitor closes the popup—these generate an average of 50% more opt-ins. (you can find this under "styles.")

(https://emotive.zendesk.com/hc/en-us/articles/4419515936919-Create-and-edit-popups-in-Emotive-Shopify-.)



(https://emotive.zendesk.com/hc/en-us/articles/5750847859863-Invite-your-email-subscribers-to-SMS.)

91.     Each claim in the '887 Patent recites an independent invention.  Neither claim 1, described above, nor any other individual claim is representative of all claims in the '887 Patent.

92.     Defendant became aware of the '887 Patent at least when this Complaint was filed. On information and belief, Defendant's infringing actions will continue after the filing of this Complaint.

93.     Defendant had knowledge of the '887 Patent and of the specific conduct that constitutes infringement of the '887 Patent at least based on the filing of this Complaint but, on information and belief, will continue to engage in the infringing activity, including by selling, making, using, providing, configuring, servicing, and installing the Accused Products and performing the accused functionality, and by engaging in activities that constitute inducing infringement and contributory infringement as described below.

94.     Defendant directly infringes at least claim 1 of the '887 Patent, either literally or under the doctrine of equivalents, by selling, making, using, providing, configuring, servicing, and installing the Accused Products and performing the accused functionality described above.  For example, on information and belief, Defendant's directly infringing activities in this District and elsewhere in the United States include at least making and using each limitation of at least claim 1 of the '887 Patent, as described above.  Defendant makes and uses the claimed inventions in connection with at least the following activities involving the Accused Products (e.g., software and corresponding systems):  (1) operating and maintaining servers and data centers that process information; (2) employing the Accused Products in connection with, and to promote, its own products and services and/or the products and services of its affiliates, (3) using software that includes the Accused Products, (4) testing the operation of the Accused Products and corresponding systems, (5) collecting and gathering information and data, and (6) providing services to others including installation, maintenance, update, verification, processing, support, and other services.

95.     In addition, Defendant directly infringes at least claim 1 of the '887 Patent because it directs and controls the performance and operation of each limitation of at least claim 1 of the '887 Patent by others.  As an example, Defendant 1) directs and controls the performance and

operation of the Accused Products or components thereof on customers', partners', and end users' devices, and 2) establishes the manner of the operation of the Accused Products.  Defendant further directs and controls by means that include contractual agreements such as its End User License Agreements, its continued monitoring, verification and access to the Accused Products, its continued collection of information from the Accused Products, its programming of the software used in the Accused Products, and/or its provision of information, data, and instructions that control the operation of the system (for example, updates to algorithms, further development, and other system and module code).

96.     On information and belief, Defendant has actively induced and is actively inducing infringement of at least claim 1 of the '887 Patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b).  Defendant's partners, customers, and end users (collectively, "Third Party Users") of the Accused Products and corresponding systems and services directly infringe at least by making and using the inventions of at least claim 1 of the '887 Patent, for example when they install, operate and use the Accused Products and corresponding systems.  Defendant has had knowledge of the asserted patent and of the specific allegations of infringement with respect to the asserted patent at least as of the filing date of this Complaint.

97.     For example, on information and belief, Defendant encourages and induces Third Party Users to use the Accused Products in a manner that infringes at least claim 1 of the '887 Patent at least by offering, selling, licensing, and providing the Accused Products which infringe at least claim 1 of the '887 Patent when used, configured, installed, and/or operated by Third Party Users.  Defendant further induces infringement of at least claim 1 of the '887 Patent by Third Party Users by engaging in activities that include: 1) making its offerings and services available on its

website, providing applications that allow users to access those offerings and services, widely advertising those offerings and services, and providing technical support and instructions to users, and 2) marketing, advertising, promotion, installation, support, and distribution activities involving the Accused Products, including its mobile-signup and mobile-messaging offerings and services in the United States; 3) recommending and selling the Accused Products and providing technical support for the installation, implementation, integration, and ongoing operation of the Accused Products; 4) providing installation, implementation, and integration of the Accused Products in addition to ensuring the Accused Products remain operational for each customer through ongoing technical support.  (*See, e.g.*, https://emotive.io/customer-success.)  For example, Defendant shares instructions, guides, and manuals, which advertise and instruct Third Party Users on how to use the Accused Products in a manner that infringes at least claim 1 of the '887 Patent. (*See  id.*;  *see  also*  https://emotive.zendesk.com/hc/en-us/articles/6147259585303-Setting-Up-Your-Popup-and-Welcome-Experience;                       https://emotive.zendesk.com/hc/en-us/articles/5750847859863-Invite-your-email-subscribers-to-SMS.)   Defendant further provides customer service and technical support to users, subscribers, and purchasers of the Accused Products and corresponding systems and services, which directs and encourages customers to perform certain actions that deploy and use the Accused Products in an infringing manner.  (*Id.*)

98.     Further, on information and belief, Defendant induces infringement by Third Party Users of the Accused Products by requiring each user to enter into one or more contractual agreements with Defendant including an End User License Agreement, which obligates each customer to perform certain actions in order to use the Accused Products and to use the Accused Products in a manner that infringes at least claim 1 of the '887 Patent.  In order to receive the benefit of Defendant and/or its partner's continued technical support and their specialized

knowledge and guidance of the operability of the Accused Products, each customer must continue to use the Accused Products in a way that infringes at least claim 1 of the '887 Patent.

99.     On information and belief, Defendant also contributes to the infringement of the Accused Products by Third Party Users by providing within the United States or importing the Accused Products into the United States, which are for use in practicing, and under normal operation practice, the claimed invention in an infringing manner, constituting a material part of the claimed invention, and not a staple article or commodity of commerce suitable for substantial non-infringing uses.  For example, the Accused Products and the example functionality described above have no substantial non-infringing uses but are specifically designed to practice at least claim 1 of the '887 Patent.

100.    The Accused Products have no substantial non-infringing uses because the accused functionality is an integral part of the Accused Products and must be performed for the Accused Products to perform their intended purpose.  For example, without providing an integration tag configured to be served with a webpage hosted by the client server as claimed, defining and sending a URI as claimed, or automatically populating a custom message as claimed, the Accused Products could not perform the click-to-text services offered and promoted by Emotive.  These features and functionalities are continually running when the Accused Products are in use and, on information and belief, cannot be removed or disabled (or, if they could, the system would no longer suitably function for its intended purpose).  Moreover, for the same reasons, without practicing each limitation of at least claim 1 of the '887 Patent, as described above, these features and functionalities could not be performed.  In other words, on information and belief, when each of the Accused Products operates, the features and functionalities described above are provided and performed.  Moreover, when the features and functionalities of the Accused Products

described above are operated, they perform each limitation of at least claim 1 of the '887 Patent. The Accused Products (and the specific features and functionalities described herein) are designed and intended specifically to practice and perform each of the limitations of at least claim 1 of the '887 Patent, and do not have any other purpose.

101.    In addition, the products, systems, modules, and methods provided by Defendant constitute a material part of the invention—indeed, it provides all the components, modules, and features that perform each of the limitations of at least claim 1 of the '887 Patent.  For example, the Accused Products and corresponding functionality constitute a material part of the inventions claimed because such analysis is integral to the capabilities and processes identified above, as required by at least claim 1 of the '887 Patent.  None of the Accused Products are staple goods— they are sophisticated and customized mobile-signup and mobile-messaging products and platforms.

102.    Plaintiff has suffered and will continue to suffer damages, including lost profits, as a result of Defendant's infringement of the '887 Patent.  Defendant is therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendant's infringement, but no less than a reasonable royalty.

103.    Plaintiff will continue to suffer irreparable harm unless this Court preliminarily and permanently enjoins Defendant, its agents, employees, representatives, and all others acting in concert with Defendant, from infringing the '887 Patent.  Plaintiff has lost potential customers, business opportunities, and goodwill in the community as a result of Defendant's infringement. Plaintiff will continue to suffer these harms absent an injunction.

## SECOND CAUSE OF ACTION
## (INFRINGEMENT OF THE '897 PATENT)

104.    Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

105.    Emotive has infringed and continues to infringe one or more claims of the '897 Patent in violation of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States and will continue to do so unless enjoined by this Court.  The Accused Products, including features such as Emotive's SMS Marketing Platform and Emotive's other offerings and services that integrate with Emotive's SMS Marketing Platform, at least when used for their ordinary and customary purposes, practice each element of at least claim 15 of the '897 Patent as described below.

106.    For example, claim 15 of the '897 Patent recites:

15.    A non-transitory processor-readable medium storing code configured to be executed by a processor, the code including instructions configured to cause the processor to:

send, from at least one server and to a mobile device requesting and/or a webpage, means for displaying an invitation to subscribe to a text messaging subscription service via a first application;

send, from the at least one server and to the mobile device, means for causing (1) the mobile device to transition from the first application to a second application different from the first application in response to the mobile device detecting a first interaction with the invitation, the second application being a messaging application, and (2) the second application to automatically populate a custom text message based on the user data;

receive, from the mobile device, the custom text message in response to the mobile device detecting a second interaction with the messaging application; and

deliver an installment of the text messaging subscription service without receiving an opt-in communication after receiving the custom text message.

107.    The Accused Products practice and embody each element of claim 15 of the '897 Patent.

108.    To the extent the preamble is construed to be limiting, the Accused Products comprise "*[a] non-transitory processor-readable medium storing code configured to be executed by a processor.*"  The Accused Products, by nature, are software applications.  As software applications, the Accused Products are designed to be stored on at least one non-transitory processor-readable medium storing code configured to be executed by a processor.

109.    Further, the Accused Products provide SMS marketing services, and therefore the applications and programs associated with the Accused Products are intended and designed to be executed by a processor of a click-to-text server.

110.    On information and belief, Emotive owns, operates, and/or maintains at least one click-to-text server with a processor on which the Accused Products operate.

111.    On information and belief, Emotive owns, operates, and/or maintains a click-to-text server on which the Accused Products operate located in Seattle, WA, having an internet protocol ("IP") address of 108.138.128.124.

112.    On information and belief, Emotive collects information associated with users of the Accused Products using, for example, an Internet tag, pixel tag, or clear GIF, and transmits the collected information to a server.  (https://emotive.io/privacy.)

113.    On information and belief, the Accused Products send/receive and/or cause a third-party provider to send/receive text messages.  For example, Emotive instructs and encourages its customers to add a custom link associated with a Signup Flow, that when selected will cause a mobile device user to receive a custom text message:



(https://emotive.io/product/build-your-subscriber-list.)

114.    The Accused Products "*send, from at least one server and to a mobile device requesting and/or a webpage, means for displaying an invitation to subscribe to a text messaging subscription service via a first application*."   For example, Emotive and its customers use the Accused Products to send an invitation as claimed.   Emotive instructs and encourages its customers

to use the Accused Products create mobile popups that offer a discount and to "Collect SMS + Email" using Emotive's "dual capture popup":

> Before we get started, here are some tips to maximize subscriber collection through your popups:
>
> 1. **Use Mobile & Desktop.** Activate popups for both platforms to reach the most traffic.
>
> 2. **Offer a discount.** Aim for at least 10% (but know that many brands offer more).
>
> 3. **Collect SMS + Email.** Our dual capture popup allows you to collect both, so you don't cannibalize either channel.
>
> 4. **Customize for your brand.** Include your brand's logo, colors, and even a background image on your popup.
>
> 5. **Activate the bubble tab/bar.** Ensure a sign-up bubble remains visible, even if a visitor closes the popup—these generate an average of 50% more opt-ins. (you can find this under "styles.")

(https://emotive.zendesk.com/hc/en-us/articles/4419515936919-Create-and-edit-popups-in-Emotive-Shopify-.)

115.    On information and belief, the popups created by the Accused Products comprise an invitation as claimed.  For example, Emotive instructs and encourages its customers to create a mobile popup using the Accused Products:



(*Id.* (annotated).)

116.    Furthermore, Emotive instructs and encourages its customers to use the Accused Products to provide, *inter alia*, a discount type and amount, custom text, and a button with which to allow interaction from the mobile device user:

## Text fields

- **Text:** Click on "Text" to select your discount type and amount (or add custom text with no discount), and select your text color by adding a HEX code or using the color selector.

- **Font:** Select the font to display on your popup.

- **Customer Input Fields.** Select "Email + SMS" if you use Klaviyo or Mailchimp as your email platform and you'd like to collect email addresses to pass along to your ESP. Select "SMS" if you only want to collect SMS opt-ins and don't use Klaviyo or Mailchimp.

- **Email collection.** If you've selected "Email + SMS," tap on the Klaviyo or Mailchimp icon and enter your API key. Then select a list from the dropdown to add new email addresses to. See more detailed instructions for Klaiyo **here**, and Mailchimp **here**.

- **Button.** You can update the button text and color.

- **Button Close.** You can update the color, size, and position. You can also remove it from the desktop version.

- Terms and privacy policy will automatically populate, there's no action needed.

(*Id.*)

117.    The Accused Products "*send, from the at least one server and to the mobile device, means for causing (1) the mobile device to transition from the first application to a second application different from the first application in response to the mobile device detecting a first interaction with the invitation, the second application being a messaging application, and (2) the second application to automatically populate a custom text message based on the user data*."

118.    For example, to implement the Accused Products, Emotive requires that its customers use a "Subscribe keyword" associated with each subscription-based and/or promotional messaging "Experience." (*Id.*) Emotive requires that its customers define a "Subscribe keyword" associated with each subscription-based and/or promotional messaging "Experience" when using

the Accused Products.  As indicated in Emotive's instructions to its customers, the "Subscribe keyword" corresponds to "the message that will populate on behalf of the subscriber in their messenger app when tapping the button on the popup":



(*Id.*)

119.    When the popup created by and associated with the Accused Products is interacted with, the mobile device to transition from the first application to a second application different

from the first application in response to the mobile device detecting a first interaction with the invitation, the second application being a messaging application, and the second application to automatically populate a custom text message based on the user data as claimed.  (*See, e.g.*, *id.*)

120.    Further, the custom text message generated and utilized by the Accused Products are based on the user data.  For example, the Accused Products differentiate a new subscriber from an existing subscriber based on user data, the page(s) visited by the user, and/or the location of the user:



(https://emotive.zendesk.com/hc/en-us/articles/5750847859863-Invite-your-email-subscribers-to-SMS.)



(https://emotive.zendesk.com/hc/en-us/articles/4419515936919-Create-and-edit-popups-in-Emotive-Shopify-.)



(*Id.*)

121.    Upon detecting an interaction with the messaging application, the mobile device sends the custom message to the server of the Accused Products.   As indicated in Emotive's instructions to its customers, the "Subscribe keyword" corresponds to "the message that will populate on behalf of the subscriber in their messenger app when tapping the button on the popup":

3) **Welcome messaging.** Now you'll create your subscribe keyword and select or create your Experience.

- **Subscribe keyword.** *This is only needed for mobile popups if you've chosen "Tap to capture" rather than "Form to capture".* This is the message that will populate on behalf of the subscriber in their messenger app when tapping the button on the popup.

- **Select an Experience.** The last step is to connect your popup to an Experience, to welcome new subscribers with an automated two-way conversation. Select an existing experience (ensure that the discount offered in the Experience is the same as the offer on your popup), or create a new one.

(https://emotive.zendesk.com/hc/en-us/articles/4419515936919-Create-and-edit-popups-in-Emotive-Shopify-.)

122.    The Accused Products "*receive, from the mobile device, the custom text message in response to the mobile device detecting a second interaction with the messaging application*." Once a user of a mobile device interacts with the messaging application, the Accused Products receive the custom message at the server of the Accused Products.  As can be seen from the image above, the server receives the custom message and responds with an installment of the text messaging subscription service.

123.    The Accused Products "*deliver an installment of the text messaging subscription service without receiving an opt-in communication after receiving the custom text message*."  Once a user of a mobile device interacts with the messaging application, the Accused Products deliver an installment of the text messaging subscription service without receiving an opt-in communication after receiving the custom text message.  As can be seen from the actual deployments of the Accused Products depicted below, the mobile device user receives an installment of the text messaging subscription service without receiving an opt-in communication after receiving the custom text message:









124.    Each claim in the '897 Patent recites an independent invention.  Neither claim 15, described above, nor any other individual claim is representative of all claims in the '897 Patent.

125.    Defendant became aware of the '897 Patent at least when this Complaint was filed. On information and belief, Defendant's infringing actions will continue after the filing of this Complaint.

126.    Defendant had knowledge of the '897 Patent and of the specific conduct that constitutes infringement of the '897 Patent at least based on the filing of this Complaint but, on information and belief, will continue to engage in the infringing activity, including by selling, making, using, providing, configuring, servicing, and installing the Accused Products and performing the accused functionality, and by engaging in activities that constitute inducing infringement and contributory infringement as described below.

127.    Defendant directly infringes at least claim 15 of the '897 Patent, either literally or under the doctrine of equivalents, by selling, making, using, providing, configuring, servicing, and installing the Accused Products and performing the accused functionality described above.  For example, on information and belief, Defendant's directly infringing activities in this District and elsewhere in the United States include at least making and using each limitation of at least claim 15 of the '897 Patent, as described above.  Defendant makes and uses the claimed inventions in connection with at least the following activities involving the Accused Products (e.g., software and corresponding systems):  (1) operating and maintaining servers and data centers that process information; (2) employing the Accused Products in connection with, and to promote, its own products and services and/or the products and services of its affiliates, (3) using software that includes the Accused Products, (4) testing the operation of the Accused Products and corresponding systems, (5) collecting and gathering information and data, and (6) providing services to others including installation, maintenance, update, verification, processing, support, and other services.

128.    In addition, Defendant directly infringes at least claim 15 of the '897 Patent because it directs and controls the performance and operation of each limitation of at least claim 15 of the '897 Patent by others.  As an example, Defendant 1) directs and controls the performance and operation of the Accused Products or components thereof on customers', partners', and end users' devices, and 2) establishes the manner of the operation of the Accused Products.  Defendant further directs and controls by means that include contractual agreements such as its End User License Agreements, its continued monitoring, verification and access to the Accused Products, its continued collection of information from the Accused Products, its programming of the software used in the Accused Products, and/or its provision of information, data, and instructions that

control the operation of the system (for example, updates to algorithms, further development, and other system and module code).

129.     On information and belief, Defendant has actively induced and is actively inducing infringement of at least claim 15 of the '897 Patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b).  Defendant's partners, customers, and end users (collectively, "Third Party Users") of the Accused Products and corresponding systems and services directly infringe at least by making and using the inventions of at least claim 15 of the '897 Patent, for example when they install, operate and use the Accused Products and corresponding systems.  Defendant has had knowledge of the asserted patent and of the specific allegations of infringement with respect to the asserted patent at least as of the filing date of this Complaint.

130.     For example, on information and belief, Defendant encourages and induces Third Party Users to use the Accused Products in a manner that infringes at least claim 15 of the '897 Patent at least by offering, selling, licensing, and providing the Accused Products which infringe at least claim 15 of the '897 Patent when used, configured, installed, and/or operated by Third Party Users.  Defendant further induces infringement of at least claim 15 of the '897 Patent by Third Party Users by engaging in activities that include: 1) making its offerings and services available on its website, providing applications that allow users to access those offerings and services, widely advertising those offerings and services, and providing technical support and instructions to users, and 2) marketing, advertising, promotion, installation, support, and distribution activities involving the Accused Products, including its mobile-signup and mobile-messaging offerings and services in the United States; 3) recommending and selling the Accused Products and providing technical support for the installation, implementation, integration, and

ongoing operation of the Accused Products; 4) providing installation, implementation, and integration of the Accused Products in addition to ensuring the Accused Products remain operational for each customer through ongoing technical support.   (*See, e.g.*, https://emotive.io/customer-success.)   For example, Defendant shares instructions, guides, and manuals, which advertise and instruct Third Party Users on how to use the Accused Products in a manner that infringes at least claim 15 of the '897 Patent.   (*See id.*; *see also* https://emotive.zendesk.com/hc/en-us/articles/6147259585303-Setting-Up-Your-Popup-and-Welcome-Experience;       https://emotive.zendesk.com/hc/en-us/articles/5750847859863-Invite-your-email-subscribers-to-SMS.)   Defendant further provides customer service and technical support to users, subscribers, and purchasers of the Accused Products and corresponding systems and services, which directs and encourages customers to perform certain actions that deploy and use the Accused Products in an infringing manner.  (*Id.*)

131.    Further, on information and belief, Defendant induces infringement by Third Party Users of the Accused Products by requiring each user to enter into one or more contractual agreements with Defendant including an End User License Agreement, which obligates each customer to perform certain actions in order to use the Accused Products and to use the Accused Products in a manner that infringes at least claim 15 of the '897 Patent.  In order to receive the benefit of Defendant and/or its partner's continued technical support and their specialized knowledge and guidance of the operability of the Accused Products, each customer must continue to use the Accused Products in a way that infringes at least claim 15 of the '897 Patent.

132.    On information and belief, Defendant also contributes to the infringement of the Accused Products by Third Party Users by providing within the United States or importing the Accused Products into the United States, which are for use in practicing, and under normal

operation practice, the claimed invention in an infringing manner, constituting a material part of the claimed invention, and not a staple article or commodity of commerce suitable for substantial non-infringing uses.  For example, the Accused Products and the example functionality described above have no substantial non-infringing uses but are specifically designed to practice at least claim 15 of the '897 Patent.

133.     The Accused Products have no substantial non-infringing uses because the accused functionality is an integral part of the Accused Products and must be performed for the Accused Products to perform their intended purpose.  For example, without providing means for displaying an invitation to subscribe to a text messaging subscription service via a first application as claimed, means for causing the mobile device to transition from the first application to a second application different from the first application as claimed, or means for causing the second application to automatically populate a custom text message based on the user data as claimed, the Accused Products could not perform the click-to-text services offered and promoted by Emotive.  These features and functionalities are continually running when the Accused Products are in use and, on information and belief, cannot be removed or disabled (or, if they could, the system would no longer suitably function for its intended purpose).  Moreover, for the same reasons, without practicing each limitation of at least claim 15 of the '897 Patent, as described above, these features and functionalities could not be performed.  In other words, on information and belief, when each of the Accused Products operates, the features and functionalities described above are provided and performed.  Moreover, when the features and functionalities of the Accused Products described above are operated, they perform each limitation of at least claim 15 of the '897 Patent. The Accused Products (and the specific features and functionalities described herein) are designed

and intended specifically to practice and perform each of the limitations of at least claim 15 of the '897 Patent, and do not have any other purpose.

134.     In addition, the products, systems, modules, and methods provided by Defendant constitute a material part of the invention—indeed, it provides all the components, modules, and features that perform each of the limitations of at least claim 15 of the '897 Patent.  For example, the Accused Products and corresponding functionality constitute a material part of the inventions claimed because such analysis is integral to the capabilities and processes identified above, as required by at least claim 15 of the '897 Patent.  None of the Accused Products are staple goods— they are sophisticated and customized mobile-signup and mobile-messaging products and platforms.

135.     Plaintiff has suffered and will continue to suffer damages, including lost profits, as a result of Defendant's infringement of the '897 Patent.  Defendant is therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendant's infringement, but no less than a reasonable royalty.

136.     Plaintiff will continue to suffer irreparable harm unless this Court preliminarily and permanently enjoins Defendant, its agents, employees, representatives, and all others acting in concert with Defendant, from infringing the '897 Patent.  Plaintiff has lost potential customers, business opportunities, and goodwill in the community as a result of Defendant's infringement. Plaintiff will continue to suffer these harms absent an injunction.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

a)     That this Court adjudge and decree that Defendant has been, and is currently, infringing each of the Asserted Patents;

b)     That this Court award damages to Plaintiff to compensate it for Defendant's past infringement of the Asserted Patents, through the date of trial in this action;

c)     That this Court award pre- and post-judgment interest on such damages to Plaintiff;

d)     That this Court order an accounting of damages incurred by Plaintiff from six years prior to the date this lawsuit was filed through the entry of a final, non-appealable judgment;

e)     That this Court determine that this patent infringement case is exceptional and award Plaintiff their costs and attorneys' fees incurred in this action;

f)     That this Court award increased damages under 35 U.S.C. § 284;

g)     That this Court preliminarily and permanently enjoin Defendant from infringing each of the Asserted Patents;

h)     That this Court order Defendant to:

(i)     recall and collect from all persons and entities that have purchased any and all products found to infringe any of the Asserted Patents that were made, offered for sale, sold, or otherwise distributed in the United States by Defendant or anyone acting on its behalf;

(ii)     destroy or deliver all such infringing products to Plaintiff;

(iii)     revoke all licenses to all such infringing products;

(iv)     disable all web pages offering or advertising all such infringing products;

(v)     destroy all other marketing materials relating to all such infringing products;

(vi)    disable all applications providing access to all such infringing software; and

(vii)   destroy all infringing software that exists on hosted systems,

i)     That this Court, if it declines to enjoin Defendant from infringing any of the Asserted Patents, award damages for future infringement in lieu of an injunction; and

j)     That this Court award such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues triable thereby.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

Christopher C. Campbell
Ryan A. Schmid
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC  20006
(202) 626-5578

Britton F. Davis
Brian Eutermoser
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900.
Denver, CO  80202
(720) 535-2300

September 1, 2022

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff Attentive Mobile Inc.*